**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**



**EVRICK P. SPEIGHT,**

**Petitioner,**

v.                                                                              **Criminal No. 2:17-cr-28**

**UNITED STATES OF AMERICA,**

**Respondent.**

### *MEMORANDUM OPINION & ORDER*

Before the Court is Evrick P. Speight's ("Petitioner") motion requesting compassionate release pursuant to 18 U.S.C. § 3582(c). ECF No. 49. The Government opposed the motion and Petitioner replied. ECF Nos. 60, 66. This matter is now ripe for judicial determination. For the reasons below, Petitioner's motion is **DENIED.**

### I. FACTUAL AND PROCEDURAL HISTORY

On February 22, 2017, Petitioner was named in a nine-count Indictment charging him with various drug and weapons crimes. ECF No. 3. On April 5, 2017, Petitioner plead guilty to Distribution of Cocaine, in violation of 21 U.S.C. 841(a)(1) and (b)(1)(C) (Count Eight), and Possession of Firearms in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. 924(c)(1)(A) (Count Nine). ECF Nos. 17, 18. According to his Presentencing Report ("PSR"), on November 29, 2016, Petitioner possessed with intent to distribute approximately 27.85 grams of a rock-like substance containing suspected cocaine, which he ultimately sold to confidential sources working in conjunction with federal and local law enforcement. ECF No. 44 at ₽ 9. Moreover, according to confidential informants Petitioner was also involved in selling firearms. *Id.* at ₽₽ 10-21. In all, Petitioner was attributed with 31.123 grams of cocaine base. *Id.* at ₽ 22. In his PSR, Petitioner reported his overall health as good and noted no history of any serious or chronic medical

conditions. *Id.* at ¶ 74. Petitioner was assessed a total offense level of 21, a criminal history category V, and a recommended guideline provision of 57 to 71 months, plus 60 consecutive months on Count 9. *Id.* at ¶¶ 85-86. On July 11, 2017, the Court imposed a sentence of Forty (40) months imprisonment on Count Eight and Sixty (60) Months on Count Nine, to be served consecutively with Count 8, followed by five years of supervised release. ECF Nos. 30, 31. Petitioner is currently incarcerated at Gilmer FCI with a scheduled projected release date of April 9, 2024. ECF No. 53; *see also,* ECF No. 49 at Exhibit 11.

On November 9, 2020, Petitioner filed his *pro se* motion for compassionate release. ECF No. 42. On December 3, 2020, the Government responded in opposition to Petitioner's *pro se* motion seeking early release. ECF No. 46. On December 29, 2020, Petitioner filed the motion for compassionate release through counsel. ECF No. 49. On January 8, 2021, Petitioner filed a supplemental memorandum. ECF No. 52. On January 31, 2021, the Government filed a motion to stay Petitioner's motion pending vaccination for COVID-19. ECF No. 56. Petitioner responded in opposition to the motion to stay and the Government replied. ECF No. 57, 58. On April 16, 2021, the Court denied the Government's motion to stay proceedings. ECF No. 59. On April 20, 2021, the Government opposed Petitioner's motion for compassionate release and Petitioner replied. ECF Nos. 60, 66.

Petitioner requests compassionate release because of the ongoing COVID-19 pandemic. At age 27, Petitioner argues that the presence of COVID-19 at Gilmer FCI presents extraordinary and compelling reasons to warrant his release. *Id.* Accordingly, Petitioner requests that the Court grant him compassionate release and allow him to begin supervised release.

## II. LEGAL STANDARD

### A. The Exhaustion Requirement

A petitioner may bring a motion to modify his or her sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons ("BOP") to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court. *Id.* However, the exhaustion requirement may be waived under the following circumstances: (1) the relief sought would be futile upon exhaustion; (2) exhaustion via the agency review process would result in inadequate relief; or (3) pursuit of agency review would subject the petitioner to undue prejudice. *United States v. Zukerman*, 2020 WL 1659880, at *3 (S.D.N.Y. Apr. 3, 2020) *citing Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019). The COVID-19 pandemic, which could result in catastrophic health consequences for petitioners vulnerable to infection, implicates all three exceptions justifying the waiver of the exhaustion requirement. *Miller v. United States*, 2020 WL 1814084, at *2 (E.D. Mich. Apr. 9, 2020); *United States v. Zukerman*, 2020 WL 1659880, at *3 (S.D.N.Y. April 3, 2020); *United States v. Perez*, 2020 WL 1456422, at *3–4 (S.D.N.Y. Apr. 1, 2020); *United States v. Gonzalez*, 2020 WL 1536155, at *2 (E.D. Wash. Mar. 31, 2020).

### B. The Compassionate Release Standard

As amended by the FIRST STEP Act, a court may modify a term of imprisonment on the motion of the petitioner after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). "Extraordinary and compelling reasons" was previously defined by the United States Sentencing

3

Commission ("Sentencing Commission") in U.S.S.G. § 1B1.13, Application Note 1. Before the passage of the FIRST STEP Act, the Sentencing Commission provided that a sentence may be modified due to the petitioner's medical condition, age, or family circumstances and further defined the limits under which a sentence reduction may be given under those justifications. U.S.S.G. § 1B1.13, n. 1 (A)–(C). The Sentencing Commission also provided a "catch-all provision" that allowed for a sentence modification upon a showing of "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* at n. 1 (D). Use of the "catch-all provision" prior to the FIRST STEP Act was severely restricted because it required approval from the BOP before an individual could petition the district court for relief. *Id.*

However, U.S.S.G. § 1B1.13 is now outdated following the passage of the FIRST STEP Act, which allows individuals to petition the district court directly without clearance from the BOP. As such, U.S.S.G. § 1B1.13 is merely advisory and does not bind the Court's application of § 3582(c)(1)(A). *McCoy v. United States*, 2020 WL 2738225, at *4 (E.D. Va. May 26, 2020); *see also United States v. Lisi*, 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020) ("[T]he Court may independently evaluate whether [petitioner] has raised an extraordinary and compelling reason for compassionate release ... [but § 1B1.13's policy statement] remain[s] as helpful guidance to courts...."); *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("[T]he Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive"). A petitioner's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). In sum, the Court may consider a combination of factors, including but not limited to those listed in U.S.S.G. § 1B1.13, in evaluating a petitioner's request for a sentence modification.

4

## III. DISCUSSION

### A. The Exhaustion Requirement

The Court finds that Petitioner did exhaust his administrative remedies prior to bringing his motion. On October 9, 2020, Petitioner submitted a Compassionate Release/Reduction in Sentence request to the Warden at Gilmer FCI. ECF No. 49 at Exhibit 4; *see also,* ECF No. 62 at Exhibit 3 (sealed). On October 28, 2020, his request was denied. *Id.* Thus, more than 30 days passed since Petitioner filed his request.

### B. Petitioner's Compassionate Release Request

The Court now turns to whether Petitioner has set forth extraordinary and compelling reasons to modify his sentence because of the grave risk COVID-19 poses to individuals with underlying health conditions. During the COVID-19 pandemic, federal courts around the country have found that compassionate release is justified under the circumstances. *Zukerman,* 2020 WL 1659880, at *4 *citing Perez,* 2020 WL 1546422, at *4; *United States v. Colvin,* 2020 WL 1613943, *4 (D. Conn. Apr. 2, 2020); *United States v. Rodriguez,* No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *7 (E.D. Pa. Apr. 1, 2020); *United States v. Jepsen,* No. 3:19-CV-00073 (VLB), 2020 WL 1640232, at *5 (D. Conn. Apr. 1, 2020); *Gonzalez,* 2020 WL 1536155, at *3; *United States v. Muniz,* No. 4:09-CR-0199-1, 2020 WL 1540325, at *2 (S.D. Tex. Mar. 30, 2020); *United States v. Campagna,* No. 16 CR. 78-01 (LGS), 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020). Unlike the above cases, Petitioner's compassionate release is not justified under the circumstances.

First, Petitioner does not show a potential susceptibility to serious health risks from COVID-19. Petitioner argues that the combination of his race and hypertension place him at increased risk for serious illness should he contract COVID-19. ECF No. 49 at 8. In his PSR, Petitioner reported his overall health as good and noted no history of any serious or chronic medical

conditions. ECF No. 44 at ₱ 74. According to Petitioner's BOP medical records, at age 27, Petitioner has a history of hypertension, but his condition has not been severe enough to warrant medication. *See* ECF No. 62 at Exhibit 1. According to the Centers for Disease Control and Prevention ("CDC"), individuals with hypertension or high blood pressure *might* be at an increased risk for severe illness if they contract the virus.[1] However, Petitioner's medical records do not indicate that his blood pressure place him at high risk. *See id.* Moreover, with respect to the impact of COVID-19 on racial minority communities, the CDC states that

> Long-standing systemic health and social inequities have put people from many racial and ethnic minority groups at increased risk of getting sick and dying from COVID-19. Studies have shown minority groups are also dying from COVID-19 at younger ages. People in minority groups are often younger when they develop chronic medical conditions and may be more likely to have more than one condition.[2]

Therefore, Petitioner states that the mere presence of COVID-19 at Gilmer FCI warrants extraordinary and compelling reasons for his release. ECF Nos. 42, 49. However, Petitioner has not provided specific evidence showing any underlying conditions that place him at risk for serious illness from COVID-19. *See* ECF No. 62 at Exhibit 1. Accordingly, the Court finds that Petitioner has not presented any evidence showing extraordinary or compelling reasons that he is at particularized risk of serious illness should he contract COVID-19.

Second, Petitioner does show a potential risk of contracting the disease at his prison facility. As of May 10, 2021, the BOP has reported a total of 298 recovered past positive cases of COVID-19 for inmates, with zero current cases and 1 past death, and 68 recovered cases for staff (3 active) at Gilmer FCI.[3] Moreover, increased testing is showing that COVID-19 has rapidly

---

[1] *See* Centers for Disease Control and Prevention, "Coronavirus Disease 2019: Cases in the US," *CDC.gov*, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html
[2] *Id.*
[3] *See* Federal Bureau of Prisons, "COVID-19 Corona Virus," *BOP.gov*, https://www.bop.gov/coronavirus/

spread throughout prisons all over the country.[4] Despite the BOP's protection measures, individuals housed in prisons remain particularly vulnerable to infection. *See Muniz*, 2020 WL 1540325, at *1; *see also Esparza*, 2020 WL1696084, at *1 (noting that "[e]ven in the best run prisons, officials might find it difficult if not impossible to follow the CDC's guidelines for preventing the spread of the virus among inmates and staff: practicing fastidious hygiene and keeping a distance of at least six feet from others"). Therefore, the Court need not wait until an outbreak occurs at a specific prison facility to determine that a petitioner has a particularized risk of contracting the disease. *See Zukerman*, 2020 WL 1659880, at *6 *citing Rodriguez*, 2020 WL 1627331, at * 12 ("the Court did not intend for that sentence to include incurring a great and unforeseen risk of severe illness or death brought on by a global pandemic").

Third, the § 3553(a) factors do not weigh in favor of Petitioner's compassionate release. The seriousness of Petitioner's conduct for his underlying offense remain unchanged. According to his PSR, Petitioner, between November 29, 2016 until his arrest, sold to confidential sources working in conjunction with federal and local law enforcement approximately 31.123 grams of cocaine base. ECF No. 44 at ¶ 9. Moreover, according to confidential informants Petitioner was also involved in selling firearms. *Id.* at ¶¶ 10-21. In all, Petitioner was attributed with 31.123 grams of cocaine base. *Id.* at ¶ 22. Petitioner also has an extensive career criminal record, starting at age 14, when he was charged with conspiracy to commit robbery and assault. *Id.* at ¶ 48. At ages 18 through 19, Petitioner was found guilty of assault and battery on the mother of his child as well as burglary, grand larceny, racketeering, identity theft, destruction of property with intent, and possession of marijuana. *Id.* at ¶¶ 51-54. Petitioner was also arrested in the past for credit card larceny, trespass, assault and battery on a family member (multiple arrests), and conspiracy to

---

[4] *See* Centers for Disease Control and Prevention, "Coronavirus Disease 2019: Cases in the US," *CDC.gov*, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html

enter house to commit felony. *Id.* at ¶¶ 60-64. As a result of his crimes and criminal history, Petitioner was assessed a total offense level of 21, a criminal history category V. *Id.* at ¶¶ 85-86. In all, Petitioner was sentenced to 100 months imprisonment. ECF Nos. 30, 31. To date, Petitioner has completed about 55 percent of his sentence and is scheduled for release on April 9, 2024. ECF No. 53; *see also,* ECF No. 49 at Exhibit 11. While in prison, Petitioner has demonstrated evidence of rehabilitation. In a letter to the Court, Petitioner recognized the wrongs of his actions and states that he has drastically improved himself. ECF No. 52 at Exhibit 1. Notably, Petitioner obtained his GED, is on the waiting list for Drug Education Course, is enrolled in Glenville State college, and has had no disciplinary actions to date. ECF No. 49 at Exhibit 2; ECF No. 53.

Overall, while the Court finds that the § 3553(a) factors do not weigh in Petitioner's favor, the Court does note Petitioner's improvement. However, for the purposes of the instant motion, Petitioner has not provided any evidence showing extraordinary or compelling reasons for release as a result of COVID-19. Therefore, based on the aforementioned factors, the Court finds that Petitioner does not qualify for compassionate release.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's motion for compassionate release, ECF No. 49, is **DENIED.** Furthermore, Petitioner's *pro se* Motion for Compassionate release, ECF No. 42, is **Moot.**

The Clerk is **DIRECTED** to send a copy of this Order to the Petitioner, the United States Attorney, the United States Probation Office, the Federal Bureau of Prisons, and the United States Marshals Service.

**IT IS SO ORDERED**.

Norfolk, Virginia
May *12*, 2021

UNITED STATES DISTRICT JUDGE

8